UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SEAN M. MOLINA,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No.  2:20-cv-375-KJN<br><br>ORDER ON PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT<br><br>(ECF Nos. 15, 16.) |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security denying his application for Disability Insurance Benefits under Title XVI of the Social Security Act.[1]  In the motion for summary judgment, plaintiff contends the Administrative Law Judge ("ALJ") erred in:  (A) failing to accurately assess plaintiff's mental impairments at step two and appropriately weigh the opinions of certain mental-health providers; and (B) articulate appropriate reasons for rejecting the testimony of plaintiff and his wife.  The Commissioner contends the ALJ's decision is supported by substantial evidence and free from legal error.

For the reasons stated below, the court DENIES plaintiff's motion, GRANTS the Commissioner's cross-motion, and AFFIRMS the final decision of the Commissioner.

---

[1] This action was referred to the undersigned pursuant to 28 U.S.C. § 636 and Local Rule 302(c)(15).  Both parties consented to proceed before a United States Magistrate Judge, and the case was reassigned to the undersigned for all purposes.  (ECF Nos. 7, 9, 11.)

I.    **RELEVANT LAW**

The Social Security Act provides benefits for qualifying individuals with an inability to "engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. § 1382c(a)(3) (Title XVI). An ALJ is to follow a five-step sequence[2] when evaluating benefit eligibility. 20 C.F.R. § 416.920(a)(4) (Title XVI). The ALJ is responsible for "determining credibility, resolving conflicts in medical testimony, and resolving ambiguities," and for "translating and incorporating clinical findings into a succinct RFC [residual functional capacity]." Ford v. Saul, 950 F.3d 1141, 1154 (9th Cir. 2020); Rounds v. Comm'r, 807 F.3d 996, 1006 (9th Cir. 2015).

A district court may reverse only if the ALJ's decision "contains legal error or is not supported by substantial evidence." Ford, 950 F.3d at 1154. Substantial evidence is more than a mere scintilla, but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Where evidence is susceptible to more than one rational interpretation, the ALJ's conclusion "must be upheld," and the court may not reverse the ALJ's decision on account of harmless error. Id. The court reviews the record as a whole—including evidence that both supports and detracts from the ALJ's conclusion—but may affirm based only on the reasons provided by the ALJ in the decision. Luther v. Berryhill, 891 F.3d 872, 875 (9th Cir. 2018). "[T]he ALJ must provide sufficient reasoning that allows [the court] to perform [a] review." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020).

---

[2]    The sequential evaluation is summarized as follows:
**Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
**Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
**Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
**Step four**: Is the claimant capable of performing past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
**Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.
Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The burden of proof rests with the claimant through step four, and with the Commissioner at step five. Ford, 950 F.3d at 1148.

## II. BACKGROUND AND ALJ'S FIVE–STEP ANALYSIS

In September of 2016, plaintiff applied for Disability Insurance Benefits, alleging disability due to "post-traumatic stress disorder, hernia, Achilles tendon, bipolar disorder, borderline personality disorder, schizoid personality disorder, anxiety disorder, and PTSD bi-polar anger management." (See Administrative Transcript ("AT") 121, electronically filed at ECF No. 13.) Plaintiff's application was twice denied, and he sought review with an ALJ and was appointed counsel. (See AT 136, 153, 154, 170.) The ALJ conducted a hearing on August 30, 2018, where plaintiff and his wife testified about plaintiff's symptoms, and a Vocational Expert ("VE") testified regarding jobs for someone with similar limitations. (See AT 63-98.)

On January 23, 2019, the ALJ issued a decision determining plaintiff was not disabled from his onset date forward. (AT 17-26.) At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 30, 2016. (AT 19.) At step two, the ALJ noted plaintiff had the following severe impairments: post-traumatic stress disorder (PTSD); major depressive disorder; personality disorder; and cannabis use disorder. (Id.) At step three, the ALJ determined plaintiff was not disabled under the listings. (AT 20, citing 20 C.F.R. Part 404, Subpart P, Appendix 1). Relevant here, the ALJ found plaintiff was moderately limited in each of the four "paragraph B" criteria for listings 12.04 (depressive, bipolar, and related disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma- and stressor-related disorders). (AT 20-21.) The ALJ gave reasons why she discounted the limitations expressed by Dr. Snyder after a psychological exam; the "multiple marked limitations and severely impaired mental functioning" expressed by Dr. Caitlin after a psychological exam; and the "moderate and marked mental limitations" expressed in a mental-impairment questionnaire by treating physician Dr. Mascovich. (See AT 23-24).

The ALJ then determined plaintiff had the RFC to perform work at all exertional levels, except that "he is capable of non-complex and routine tasks with one- to three-step instructions with no public contact; he can have only occasional contact with supervisors and coworkers; and he is able to maintain attention and concentration for approximately 2-hour blocks and would be able to deal with changes in the routine work setting." (AT 21.) In fashioning this RFC, the ALJ

stated she considered plaintiff's symptoms, the medical evidence, and professional medical opinions in the record. (Id.) Relevant here, the ALJ gave great weight to the opinions of the two non-examining state-agency psychological consultants; "partial weight" to the mental limitations assessed by Dr. Snyder; and "little weight" to the opinions of Drs. Caitlin and Mascovich. (See AT 23-24.) Further, the ALJ rejected the more limiting aspects of plaintiff's subjective symptom testimony as "inconsistent because [of] the very few medical records and reports relevant to the period since September 30, 2016," as well as because of the "minimal mental health treatment history." (AT 22-23.) The ALJ also gave "partial weight" to the testimony of plaintiff's wife because it was not sufficiently specific and was in contrast to the objective medical evidence. (AT 24.) Based on this RFC and the VE's testimony, the ALJ concluded plaintiff was capable of performing multiple jobs that exist in significant numbers in the national economy. (AT 25.) Thus, the ALJ determined plaintiff was not disabled for the relevant period. (AT 26.)

The Appeals Council denied plaintiff's appeal. (AT 2-4.) Thereafter, plaintiff filed this action requesting review of the ALJ's decision, and the parties each moved for summary judgment. (ECF Nos. 1, 15, 16, 17.)

### III.  DISCUSSION

Plaintiff contends the ALJ erred in failing to: (A) accurately assess plaintiff's mental impairments and prioritize the opinions of the two non-examining state-agency psychological consultants over the opinions of Drs. Snyder, Caitlin, and Mascovich; and (B) articulate legally-appropriate reasons for rejecting the testimony from plaintiff and his wife.[3] Thus, plaintiff requests remand for further proceedings. (ECF Nos. 15, 17)

The Commissioner requests affirmance, arguing substantial evidence supports the ALJ's findings with each of plaintiff's allegations of error. (ECF No. 16.)

///

///

---

[3] Plaintiff argues four points of error concerning the ALJ's treatment of his mental limitations. (ECF No. 15.) However, because plaintiff's overarching argument is that the ALJ's errors "permeated" the analysis, the undersigned collapses the step-two and medical-opinion analysis into a single point.

**A.     ALJ's Analysis of the Medical and Opinion Evidence at Step Two and in the RFC.**

**Legal Standards, Step Two and Mental Impairments**

At step two, an ALJ is required to determine whether the claimant has any "severe" impairments.  See 20 C.F.R. § 416.920a.  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (internal citations and quotation marks omitted).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  Id.

Allegations of disability due to any mental impairment requires an ALJ "to follow a special psychiatric review technique."  Keyser v. Comm'r, 648 F.3d 721, 725 (9th Cir. 2011); 20 C.F.R. § 404.1520a(a) (in evaluating the severity of mental impairments, "we must follow a special technique at each level in the administrative review process").  First, the ALJ must determine whether plaintiff has any "medically determinable mental impairment(s)," i.e. those that "result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques . . . [as] established by objective medical evidence from an acceptable medical source."  §§ 416.920a(b)(1) and 416.921.  Second, the ALJ must "rate the degree of functional limitation resulting from the impairment(s)" in four main areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; (4) and adapting or managing oneself.  § 416.920a(b)(2) and (c)(3).

To be deemed disabled under the Listings for (relevant here), depressive, bipolar, and related disorders (12.04), personality and impulse-control disorders (12.08), and trauma- and stressor-related disorders (12.15), the ALJ checks for an 'extreme' limitation of one, or 'marked' limitation of two, of the four areas of mental functioning."  See 20 C.F.R. § 404, Subpt. P, Appx. 1 at Listing 12.00A "Mental Disorders"; see also 20 C.F.R. § 416.920a(c)(4) and (d)(1)-(2) (noting use of a five-point scale of "[n]one, mild, moderate, marked, and extreme," and generally directing that a rating of "none" or "mild" will result in a non-severe finding, while "severe" findings require a comparison to the Listings and consideration at the RFC stage).

5

**Legal Standards, Medical and Opinion Evidence**

The ALJ is required to consider a host of factors in deciding the weight given to any medical opinion, including the examining relationship, the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, specialization, and any other factors deemed relevant.  20 C.F.R. § 404.1527(c)(1)-(6).  For cases filed before March 27, 2017,[4] the weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals (the "Treating Physician Rule").  Holohan v. Massanari, 246 F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally speaking, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion carries more weight than a non-examining physician's opinion.  Holohan, 246 F.3d at 1202.

In order to evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether: (1) contradictory opinions are in /the record; and (2) clinical findings support the opinions.  Lester, 81 F.3d at 831.  To reject the uncontradicted opinion of a treating or examining doctor, the ALJ must provide "clear and convincing reasons that are supported by substantial evidence."  Ryan v. Comm'r, 528 F.3d 1194, 1198 (9th Cir. 2008).  Conversely, a contradicted opinion may be rejected for "specific and legitimate" reasons.  Lester, 81 F.3d at 830.  An ALJ provides specific and legitimate reasons by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [an] interpretation thereof, and making findings."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 2011).

While a treating professional's opinion generally is accorded superior weight under the Treating Physician Rule, if another medical professional's opinion (supported by different independent clinical findings) contradicts it, the ALJ is to resolve the conflict.  Andrews v.

---

[4] For a discussion on how the Commissioner treats medical opinions and "prior administrative medical findings" for claims filed on or after March 27, 2017, see 20 C.F.R. § 416.920c.  Because plaintiff's claim was filed after March 27, this new regulation is inapplicable in plaintiff's case.

Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes, 881 F.2d at 751); see also Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001) (noting the regulations require the ALJ to weigh the contradicted treating physician opinion).  However, if the treating physician's opinion is conclusory or supported by minimal clinical findings, the ALJ need not give it any weight.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.

The opinion of a non-examining professional, by itself, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831; but see Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record.").

**Analysis**

Here, plaintiff challenges the ALJ's assignment of "moderate" to each of plaintiff's four functional areas (see AT 21 (discussing evidence supporting the "moderate" findings at step two)), contending evidence in the record supported either (a) "marked" or "extreme" designations in one or more of the four main areas, or (b) a more restrictive RFC that would have led to a finding of disabled at step five.  This evidence includes the opinion of Dr. Mascovich, plaintiff's treating physician (AT 419-24), and the opinions of Drs. Snyder (AT 372-75) and Caitlin (AT 377-86), each of whom conducted a variety of tests during separate mental examinations of plaintiff.  The ALJ, for all practical purposes, gave little weight to each of these opinions (AT 23-24), instead crafting the step two analysis and RFC based on the opinions of the two non-examining state-agency consultants (AT 130-33 and 146-50) and the medical evidence in the record.  (See AT 21-22 (ALJ's step two analysis and evidence relied upon); AT 22-23 (ALJ's summary of the medical evidence in the record); AT 23-24 (ALJ's resolution of the medical opinion evidence).)  The question is first whether the ALJ's rejection of the three opinions was legally permissible, then whether the remaining evidence relied upon constitutes substantial evidence.  The court finds that, despite some inconsistencies, no reversible error exists.

Plaintiff vehemently argues the ALJ erred in discounting the opinion of Dr. Caitlin, who conducted a battery of tests in a May 2017 exam. Thereafter, Dr. Caitlin opined plaintiff was extremely impaired in his ability to understand, remember, and carry out detailed instructions. (AT 384.) She also found marked impairments in nineteen separate functional areas, including:

> plaintiff's ability to understand and remember short and simple work-like procedures; carry out short and simple instructions; maintain adequate pace and persistence to perform simple tasks; maintain his attention for a two-hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; maintain an adequate pace and persistence while performing complex/detailed tasks; perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; interact appropriately with the general public; adapt to changes in job routine; withstand the stress of a routine workday; accept instruction and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; interact appropriately with co-workers, supervisors, and public on a regular basis; be aware of normal hazards and take appropriate precautions; travel to unfamiliar places; and use public transportation.

(AT 384-85 (cleaned up).) In fact, the only functional area Dr. Caitlin noted as "not impaired" was in plaintiff's ability to "adhere to basic standards of neatness and cleanliness." (AT 385.)

Giving full weight to this opinion, even when conforming Dr. Caitlin's 23 categories to the four functional areas of Section 416.920a(c)(3), would more than likely have led to a finding of disabled under the Listings, or if not, then a disabling RFC. See 20 C.F.R. § 404, Subpt. P, Appx. 1 at Listing 12.00A "Mental Disorders." However, these opinions were rejected because the ALJ found them unsupported by Dr. Caitlin's own treatment notes and inconsistent with the other medical and opinion evidence. (AT 24.) On lack of support, the ALJ noted Dr. Caitlin's opinions derived from: (a) a one-time evaluation of plaintiff; (b) her inexperience with Social Security's policies; (c) her diagnoses of moderate major depressive disorder and PTSD; (d) the moderately-impaired mental status examination findings; and (e) a reliance on plaintiff's subjective reports. (Id.) On inconsistency, the ALJ cited to plaintiff's "minimal treatment and varied mental findings," as well as to the reports of Drs. Snyder and Mascovich. (Id.)

Plaintiff also alleges error in the ALJ's discounting of examining psychologist Dr. Snyder's opinions, formulated after an April 2017 exam. Dr. Snyder found plaintiff was moderately-to-severely impaired in his ability to follow complex/detailed instructions; maintain persistence with complex tasks; and interact appropriately with co-workers, supervisors, and the public on a regular basis. (AT 374-75.) Dr. Snyder found plaintiff was moderately impaired, or unimpaired, in six other areas. (Id.) However, the ALJ appears to have discounted all of these opinions, finding that Dr. Snyder's "description of [plaintiff's] unimpaired, moderately impaired, and moderately-to-severely impaired limitations do not spell out [his] maximum levels of functioning." (AT 23.) The ALJ assigned Dr. Snyder's opinion "partial weight." (Id.)

Finally, plaintiff alleges the ALJ erred in discounting the opinion of his treating physician Dr. Mascovich, who opined on an August 2018 "Mental Impairment Questionnaire" that plaintiff would have moderate limitations in his ability to understand, remember, and apply information (with some marked limitations thereunder), moderate-to-marked ability to concentrate, persist, or maintain pace; and marked limitations in his ability to interact with others and to adapt or manage himself. (AT 420-22.) The ALJ gave little weight to this opinion due to its inconsistency with Dr. Caitlin's report and to the lack of support in Dr. Mascovich's "slightly abnormal mental status examinations shown in the mental health records." (AT 24.) The ALJ also cited to Dr. Mascovich's admitted lack of knowledge of plaintiff's ability to function in a work setting; the fact that the Dr. had only seen plaintiff two-to-three times, mostly for medication management; and the lack of evidence to support a more-than-mild substance-use disorder. (Id.)

Plaintiff is correct to notice multiple logical inconsistencies in the ALJ's decision. First, the ALJ discounts Dr. Caitlin's opinion because she only met with plaintiff one time for an exam. However, the ALJ gave "great weight" to the non-examining state-agency consultants, who never once met with him. The undersigned finds this reasoning flawed, but finds the error harmless at best given the remaining reasons listed. Ford, 950 F.3d at 1154 (reminding that the court may not reverse the ALJ's decision on account of harmless error).

Second, there is some dispute as to what exactly the ALJ discounted from Dr. Snyder's report. The Commissioner argues that because Dr. Snyder's opinion was assigned "partial

weight," some of what was contained in the report constitutes substantial evidence. The court does not disagree with this broad premise, but in reading the ALJ's decision, it is clear that all of Dr. Snyder's opinions from the medical source statement were discounted. The ALJ stated "Dr. Snyder's description of the claimant's unimpaired, moderately impaired, and moderately-to-severely impaired limitations do not spell out the claimant's maximum levels of functioning. Due to the absence of a specific function-by-function description of the claimant's mental capabilities, I assign only partial weight to Dr. Snyder's opinion." (AT 23.) But because Dr. Snyder's MSS only assigned "unimpaired, moderately impaired, and moderately-to-severely impaired limitations," this practically constitutes a complete rejection of the opinion. The question then becomes, what evidence is left from Dr. Snyder's report? The answer: Dr. Snyder's test results from the Mental Status Exam—which the ALJ referenced throughout the decision. (See, generally, AT 20-24, citing "Exhibit B7F.") A medical professional's notes and diagnoses in the record can contribute to a substantial-evidence finding. See Ford, 950 F.3d at 1152 (affirming the ALJ's rejection of examining psychiatrists opinion in part due to observations and diagnoses made during the plaintiff's medical office visits).

Third, the decision gives the impression the ALJ relies on the opinion of Dr. Snyder to discount Dr. Caitlin's opinion, and relies on Dr. Caitlin's opinion to discount Dr. Mascovich's opinion. (See, e.g., AT 24 ("Dr. Mascovich's belief . . . is not entirely consistent with Dr. Catlin's [sic] findings and opinion . . . .") (emphasis added).) Perplexingly, the ALJ explicitly gave "little weight" to Dr. Caitlin's twenty-three functional assessments, and (ostensibly) little weight to Dr. Snyder's opinions. A reliance on a discounted opinion to discount another opinion appears logically flawed. However, upon closer inspection, it is clear the decision is attempting to note the overall inconsistency in the evidence of plaintiff's mental impairments. For example, Dr. Mascovich opined plaintiff had marked limitations in his ability to interact with others and to adapt or manage oneself, and only moderate limitations his ability to understand, remember, and apply information and to concentrate, persist or maintain pace. (AT 421-22.) Conversely, Dr. Snyder's more-severe assignments revolved around plaintiff's abilities in processing information and maintaining pace. (AT 374-75.) To be sure, there is some overlap between these three

opinions—e.g. all three found plaintiff severely impaired in his ability interact with others. However, there is more daylight between these opinions and the overall record—such that the ALJ was not wrong to notice inconsistencies. As the ALJ described, other medical records indicated plaintiff could, for example, engage with others, maintain full orientation, and behave appropriately, and the two state-agency physicians relied on these types of inconsistencies when formulating their "moderate" opinions. (See AT 23, citing various medical records and opinion assessment of Drs. Goosby and Garland.) Despite the odd appearance of circular logic, the undersigned can reasonably discern that the ALJ is attempting to note the variety of observations, notes, and diagnoses recorded during his treatment period, such that no error exists here. Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("Even when an agency explains its decision with less than ideal clarity, we must uphold it if the agency's path may reasonably be discerned.").

Beyond these issues of imprecision and harmless error, however, the ALJ's decision is one supported by substantial evidence and free from legal error. The record demonstrated inconsistent and varied assessments of the severity of plaintiff's mental impairments. Given this, the ALJ was tasked with resolving the conflicts, and the undersigned is not permitted to reweigh the evidence. Andrews, 53 F.3d at 1041 (noting that when inconsistencies exist across the record, the ALJ is tasked with resolving such conflicts). The ALJ rejected the opinions of Drs. Mascovich, Caitlin, and Snyder as inconsistent with the "moderate" findings ascribed by Drs. Goosby and Garland, as well as with the "minimal treatment and varied mental findings" from plaintiff's office visits with Drs. Mascovich and Caitlin. (See AT 24.) This is a specific and legitimate reason for discounting medical opinions. See Ford, 950 F.3d at 1152 (affirming the ALJ's rejection of examining psychiatrists opinion due to competing opinion of non-examining professionals and the observations and diagnoses made during plaintiff's medical office visits).

Further, the ALJ noted Dr. Mascovich's opinions lacked support in his office's medical records. (See AT 24 ("Dr. Mascovich's belief . . . is unsupported by the slightly abnormal mental status examinations shown in the mental health records.") (citing, among other things, records from Dr. Mascovich's office at AT 395-418).) Similarly, the ALJ found Dr. Caitlin's "moderate" diagnoses and examination findings to strip support from her assignment of "marked" and

"extreme" limitations. (AT 24, citing Dr. Caitlin's report at AT 377-86.) Lester, 81 F.3d at 831 (one factor a court considers in determining whether an ALJ properly rejected a medical opinion is whether clinical findings support the opinions); see also, e.g., Murchison v. Saul, 836 F. App'x 594, 595 (9th Cir. 2021) (finding permissible reasons to discount psychological consultative examiner's opinion because it "was inconsistent with [c]laimant's sparse mental health treatment and with the clinical findings concerning [his] concentration, persistence, and pace").

Plaintiff seizes on the ALJ's rejection of Dr. Caitlin's opinion due to an alleged over-reliance on plaintiff's subjective symptoms. However, as the undersigned has noted, the ALJ detailed the supportability and inconsistency issues in the record—beyond just a reliance on plaintiff's subjective-symptom testimony. In any case, plaintiff's subjective symptom accounts were adequately rejected (see below), and "[a]n ALJ may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Further, the ALJ offered additional reasons to give less weight to the opinions of Drs. Caitlin, Snyder, or Mascovich. (See AT 23-24 (weighing Dr. Caitlin's and the state-agency doctors' opinions due to their relative professional experience with the program's policies; giving little weight to Dr. Snyder's opinions in part because he did not "spell out [plaintiff's] maximum levels of functioning"; and noting Dr. Mascovich's admitted lack of knowledge of plaintiff's ability to function in a work setting). These reasons were not impermissible. See, e.g., Oliver v. Comm'r, 2020 WL 977892, at *10 (E.D. Cal. Feb. 28, 2020) (knowledge of claimant's history is a proper factor in evaluating the weight to give a medial source's opinion) (citing 20 C.F.R. § 416.927(c)(2)(i)); Capitani v. Astrue, 2008 WL 11355422, at *8 (S.D. Cal. May 16, 2008) (finding rejection appropriate where partially based on physician's unfamiliarity with the Commissioner's regulations for evaluating disability).

The ALJ assigned an RFC that severely restricted plaintiff's contact with others, as well as the information he would be required to process on a job. This RFC is not out of alignment with the medical evidence in the record and the opinions of the state-agency consultants. Rounds, 807 F.3d at 1006 (it is for the ALJ to translate and incorporate clinical findings into a succinct RFC).

**B.      Subjective Symptom and Lay Testimony**

**Legal Standards, Subjective Symptom Testimony**

In evaluating a claimant's symptoms testimony, the following analysis is used:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant is not required to show the impairment caused the severity of the symptom alleged, nor required to produce objective medical evidence thereof. Instead, the claimant only need show the impairment could reasonably have caused some degree of the symptom. If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.

Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (noting the clear and convincing standard is not easy to meet, and is "the most demanding [standard] required in Social Security cases").

Under the clear and convincing standard, the ALJ's reasons for discounting or rejecting a claimant's subjective symptom testimony must be "sufficiently specific to allow a reviewing court to conclude the adjudicator . . . did not arbitrarily discredit a claimant's testimony." Brown-Hunter v. Colvin, 806 F.3d 487, 483 (9th Cir. 2015). This requires the ALJ to "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines that testimony." Treichler v. Comm'r, 775 F.3d 1090, 1102 (9th Cir. 2014).

Examples of "specific, clear and convincing reasons" for discounting or rejecting a claimant's subjective symptom testimony can include the effectiveness of or noncompliance with a prescribed regime of medical treatment, a record of conservative treatment, inconsistencies between a claimant's testimony and his or her conduct (including daily activities), and whether the alleged symptoms are consistent with the medical evidence of record. See Tommasetti, 533 F.3d at 1040; Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007). A lack of corroborating, objective medical evidence alone is insufficient grounds to discount a claimant's subjective symptoms; however, it is a factor the ALJ may consider. 20 C.F.R § 404.1529(c)(2); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Broadly speaking, a claimant's statements of subjective symptoms alone is insufficient grounds to establish disability. 20 C.F.R § 404.1529(a); Treichler, 775 F.3d at 1106.

**Legal Standards, Lay Testimony**

"[C]ompetent lay witness testimony cannot be disregarded without comment." Molina, 674 F.3d at 1114 (internal quotation and citation omitted). "[I]n order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Id. "Further, the reasons 'germane to each witness' must be specific." Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009). Contradictory evidence in the record is a germane reason for rejecting lay testimony. See Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).

**Analysis**

Here, the ALJ began her analysis of plaintiff's subjective symptom testimony with the oft-repeated statement that while plaintiff's testimony generally aligned with the medical evidence, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (AT 22.) The ALJ then summarized plaintiff's hearing testimony and the medical evidence aligning therewith. (AT 22-23.) The ALJ concluded the following were reasons for discounting the more limiting aspects of plaintiff's subjective symptom testimony: inconsistency with the "very few medical records and reports," "minimal mental health treatment and no psychiatric hospitalizations," plaintiff's normal behavior at various medical appointments, and the results of his mental status exams during the relevant period. (Id.) The question is whether the ALJ's description of plaintiff's symptom testimony and rationale for rejecting it meets the Ninth Circuit's clear and convincing standard. The court finds that it does.

The ALJ primarily relied on a lack of corroborating objective medical evidence to support her decision to discount plaintiff's testimony that he could not work because of his impairments. See, e.g., Morgan v. Comm'r, 169 F.3d 595, 600 (9th Cir. 1999) (finding ALJ provided clear and convincing reasons for rejecting claimant's subjective symptom testimony by citing, among other things, inconsistencies between claimant's testimony and medical evidence). When paired with the ALJ's finding of conservative course of care, this suffices. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989) (claimant's lack of more extensive medical treatment justified ALJ's discounting of severe pain). For these reasons, the ALJ did not fail in her duty to provide clear and

convincing reasons for discounting plaintiff's subjective symptom testimony.  Treichler, 775 F.3d at 1102; see also Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) ("if the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing"); Morgan, 169 F.3d at 599-600 (where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld).

As to plaintiff's wife's testimony, the ALJ assigned it partial weight, accepting her "insight into the severity of [plaintiff's] multiple mental disorders." (AT 24.)  However, the ALJ found that, like the findings on the medical opinions of Drs. Caitlin, Snyder, and Mascovich, plaintiff's wife's testimony was inconsistent with the medical evidence in the longitudinal record.  This also suffices.  Lewis, 236 F.3d at 512.

## IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED;
2. The Commissioner's cross motion (ECF No. 16) is granted;
3. The final decision of the Commissioner is AFFIRMED; and
4. The Clerk of Court shall issue judgment in defendant's favor and close this case.

Dated:  September 7, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

moli.375